# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BIOPLUS SPECIALTY PHARMACY SERVICES, INC.,** | ) ) ) |
| Plaintiff, | ) ) Civil Action No. 1:18-cv-03370-WFK-ST ) |
| v. | ) ) ) **JURY TRIAL DEMANDED** |
| **B.O.P. PHARMACY, INC.,** | ) ) |
| Defendant. | ) ) |

## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Dated: July 27, 2018

    Hal K. Litchford, Esq.
Admitted *pro hac vice*
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWTIZ PC

Jura C. Zibas, Esq.
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
Attorneys for Plaintiff BioPlus Specialty
Pharmacy Services, Inc.

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................................. ii
TABLE OF AUTHORITIES ...................................................................................................... iii

I. EXTREME AND IRREPARABLE HARM TO CONSUMERS AND TO
   PLAINTIFF IS ONGOING ................................................................................................2

II. THE UNDISPUTED EVIDENCE CONCLUSIVELY PROVES THAT BIOPLUS
    IS THE SENIOR USER OF THE BIOPLUS MARK .......................................................3

III. THE REGISTRATION CLASS OF PLAINTIFF'S TRADEMARK HAS NO
     BEARING ON THE INFRINGEMENT ANALYSIS .......................................................4

IV. THE POLAROID FACTORS OVERWHELMINGLY FAVOR PLAINTIFF...................4

    A. The Respective Marks Are Nearly Identical............................................................4
    B. The Relative Services Are Extremely Close Or Identical .......................................5
    C. BioPlus Has Developed Strong Rights In The BIOPLUS Mark Over The
       Course of Two Decades ...........................................................................................7
    D. Actual Confusion Is Abundant And Documented ...................................................9
    E. Defendant's Bad Faith Is Exhibited By Its Continued Willfull Infringement Of
       Plaintiff's Trademark Rights....................................................................................9

V. REGARDLESS OF THE STANDARD APPLIED BY THE COURT, PLAINTIFF
   EASILY MEETS IT .........................................................................................................10

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Ins. Co. v. Allstate Inv. Corp.*,
 210 F. Supp. 25 (W.D. La. 1962), aff'd, 328 F.2d 608 (5th Cir. 1964) ...............................7, 8

*Dawn Donut Co. v. Hart's Food Stores, Inc.*,
 267 F.2d 358 (2d Cir. 1959)...............................................................................................10

*Gen. Mills, Inc. v. Chobani*,
 LLC, 158 F. Supp. 3d 106...................................................................................................10

*Giant Food, Inc. v. Nation's Foodservice, Inc.*,
 710 F.2d 1565, 218 U.S.P.Q. 390 (Fed. Cir. 1983) ..............................................................3

*In re Thomas*,
 79 USPQ2d 1021 (TTAB 2006) .........................................................................................5

*Keebler Co. v. Murray Bakery Products*,
 866 F.2d 1386, 9 U.S.P.Q.2d 1736 (Fed. Cir. 1989) ...........................................................5

*Patsy's Italian Rest., Inc. v. Banas*,
 658 F.3d 254 (2d Cir. 2011)................................................................................................4

*Polaroid Corp. v. Polarad Elecs. Corp.*
 287 F.2d 492 (2d Cir. 1961) ...............................................................................................5

*Standard Intern. Corp. v. American Sponge & Chamois Co.*,
 55 C.C.P.A. 1155, 394 F.2d 599, 157 U.S.P.Q. 630 (1968) ...............................................7

*Sunward Elecs., Inc. v. McDonald*,
 362 F.3d 17 (2d Cir. 2004).................................................................................................10

*Virgin Enterprises Ltd. v. Nawab*,
 335 F.3d 141 (2d Cir. 2003)...........................................................................................5, 6

*Vox Amplification Ltd. v. Meussdorffer*,
 No. CV 13-4922 ADS GRB, 2014 WL 558866 (E.D.N.Y. Feb. 11, 2014)..........................2

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).....................................................2, 3

**STATUTES**

15 U.S.C.A. § 1127 ........................................................................................................................5

4815-8377-2526 v6

**OTHER AUTHORITIES**

McCarthy on Trademarks and Unfair Competition § 11:85 (5th ed.) ............................................8

McCarthy on Trademarks and Unfair Competition § 19:56 (5th ed.) ............................................4

McCarthy on Trademarks and Unfair Competition § 24:65 (5th ed.) ............................................4

www.biopluspharmacy.com ........................................................................................................10

4815-8377-2526 v6

Plaintiff BioPlus Specialty Pharmacy Services, Inc. ("BioPlus") files this Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction.

Defendant's Opposition is replete with irrelevant facts and mischaracterizations of well-settled trademark law, and fails to demonstrate that a preliminary injunction is inappropriate in this case. This is because Defendant does not, indeed cannot, dispute that (1) the Plaintiff's BIOPLUS trademark (the "BIOPLUS Mark") registered on the Principal Register of the United States Patent and Trademark Office several years before Defendant was incorporated (U.S. Trademark Reg. No. 2,329,227, or the " '227 Registration"); (2) Defendant uses a nearly identical tradename (Bio Plus Pharmacy, Bio Plus Pharmacy, Inc., and/or Bio Plus Pharmacy, Inc. and Surgical Supplies); and (3) the '227 Registration covers services that are the same as, overlapping with, and/or closely related to the services that Defendant provides under its nearly identical name. Defendant is the junior user of the name "Bio Plus" in every aspect of its business; several instances of actual confusion have been documented. Plaintiff will succeed on the merits of its claims for trademark infringement and false designation of origin.

Defendant's Opposition also misrepresents the facts regarding the parties' 2011 interaction in order to avoid acknowledging to this Court that, for a full *half of the time that Defendant has been in operation*, it has been knowingly and willfully infringing on Plaintiff's trademark rights. Defendant claims that at the time of the 2011 interaction and name change by Defendant, "there was no dispute concerning confusion among customers, but rather with this one, solitary reimbursement." This is false. A letter from Plaintiff BioPlus' counsel dated November 14, 2011, addressed to Defendant's owners Clement Ho and Wai Yan Tse, pointed to several documented instances of actual confusion whereby eRx scripts intended for BioPlus were mistakenly sent to Defendant. BioPlus demanded that Defendant change its name to avoid

1

further confusion. *See* **Exhibit A**. Instead, Defendant persisted in its business under a name it knew was infringing and confusing, despite assuring BioPlus that it would make the requested change.

Defendant's willingness to flag misdirected prescriptions is an inadequate response to a potential medical predicament for BioPlus and its patients, and cannot compensate for the significant loss of Plaintiff's goodwill and threat to patient safety that will continue to occur, should this injunction not issue.

I. **EXTREME AND IRREPARABLE HARM TO CONSUMERS AND TO PLAINTIFF IS ONGOING**

Defendant's Opposition largely overlooks the unascertainable and non-compensable harm detailed in Plaintiff's opening brief. Such is precisely the type of irreparable harm that a preliminary injunction was designed to prevent. "Irreparable harm 'exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark pending trial,' because loss of control over one's reputation is neither 'calculable nor precisely compensable.'" *Vox Amplification Ltd. v. Meussdorffer*, No. CV 13-4922 ADS GRB, 2014 WL 558866, at *14 (E.D.N.Y. Feb. 11, 2014) (*internal citations omitted*). The damage to Plaintiff's reputation from being unable to serve its customers in an acceptable manner and live up to its advertised guarantees is unquantifiable in its extent but definite in its existence. Defendant's complaint that it would lose "14 years of goodwill" in its name ignores the fact that seven out of those fourteen years were spent trading on Plaintiff's goodwill by infringing on Plaintiff's trademarks, a number of such years after assuring Plaintiff that it would not do so.

Plaintiff agrees with Defendant that the Supreme Court's guidance in *Winter* is applicable here: "In each case, courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the *public consequences*." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 367, 172 L.

2

Ed. 2d 249 (2008) (*emphasis added*). Members of the public – Plaintiff's customers – are *experiencing* harm *currently* in the form of inability to access their needed prescription medications in a timely fashion. Another public consequence of Defendant's ongoing infringement is the serious and unintended exposure of patients' private personal health information (PHI) to Defendant.

Defendant does not explain how Defendant's own customers would be in "great risk of not having their prescriptions filled in a timely fashion" should this Court issue an injunction. *This* alleged, potential harm is speculative; however, the *current* inability of Plaintiff's customers to access their prescription medications is *real* and ongoing. To wit, Plaintiff submits four additional examples of actual confusion, in the form of misdirected eRxes, that Plaintiff has collected. *See* **Exhibits B-E**. In the case of each of these misdirected eRxes, Plaintiff was unable to fulfill its service guarantees because of the delay in receiving same. *See* Montanez Dec. at ¶¶6-9.

## II. THE UNDISPUTED EVIDENCE CONCLUSIVELY PROVES THAT BIOPLUS IS THE SENIOR USER OF THE BIOPLUS MARK

Defendant is not the senior user of the BIOPLUS Mark, in New York or anywhere else. Plaintiff's '227 Registration registered on March 14, 2000, four full years before Defendant began operations. The Lanham Act affords nationwide rights to registered marks, *regardless* of the territory in which the registrant actually uses the mark. *See Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 218 U.S.P.Q. 390 (Fed. Cir. 1983). Defendant's references to Plaintiff's registration with the New York State Board of Pharmacy or "authoriz[ation] to do business in New York State" are irrelevant.

Defendant's argument erroneously hangs on the importance of the wording "for pharmacy services," which services Defendant claims are not covered by the '227 Registration because that wording is not recited literally therein. Defendant misstates well-established

3

trademark law when it suggests that Plaintiff's exclusionary rights only apply to the exact services listed in the registration certificate for the '227 Registration. While the *presumption of validity* for a federally registered mark extends only to the goods and services specified in the registration, the *exclusionary rights* of a registered trademark owner are *not* so limited: they go to any goods or services on which the use of the mark is likely to cause confusion. 4 McCarthy on Trademarks and Unfair Competition § 24:65 (5th ed.) (*citing Chandon Champagne Corp.*, *supra*, 335 F.2d at 534). As explained herein and in Plaintiff's opening brief, confusion is abundantly likely and actually evidenced on the record.

### III. THE REGISTRATION CLASS OF PLAINTIFF'S TRADEMARK HAS NO BEARING ON THE INFRINGEMENT ANALYSIS

Similarly, a large portion of Defendant's Opposition hinges on the argument that the '227 Registration does not list services in International Class 35. Unfortunately for Defendant, "[t]he PTO's classifications exist solely for administrative purposes, and does [*sic*] not affect the substantive rights of a mark's owner in any way." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 269 (2d Cir. 2011) (*citing* 15 U.S.C. § 1112). "[T]he fact that goods are found in different classes has no bearing on the question of likelihood of confusion." 3 McCarthy on Trademarks and Unfair Competition § 19:56 (5th ed.) (*citing National Football League v. Jasper Alliance Corp.*, 16 U.S.P.Q.2d 1212, n.5 (T.T.A.B. 1990)). Accordingly, it is absolutely irrelevant whether the '227 Registration "look(s) like" those of its "peers."

### IV. THE *POLAROID* FACTORS OVERWHELMINGLY FAVOR PLAINTIFF

#### A. The Respective Marks Are Nearly Identical

Defendant's Opposition does not address the identity of the parties' marks; Defendant operates under a name that is essentially identical to Plaintiff's BIOPLUS Mark.

Further, Plaintiff's corporate name is immaterial to the trademark infringement analysis. As customer confusion is at issue, it is only relevant what designation a person or company uses

4

to identify and distinguish its goods and services. 15 U.S.C.A. § 1127. Defendant, however, appears to suggest that Plaintiff's federal registration for the term BIOPLUS is inadequate or ineffective because it does not incorporate all of Plaintiff's corporate name, or any other terms that Plaintiff may use, in addition to its BIOPLUS Mark. This line of reasoning is inapposite in the current inquiries.

Plaintiff's valid federal trademark registration for BIOPLUS predates Defendant's adoption of an identical trade name alongside generic terms ("Pharmacy," "Surgical Supplies," "Inc."). *See Keebler Co. v. Murray Bakery Products*, 866 F.2d 1386, 9 U.S.P.Q.2d 1736 (Fed. Cir. 1989). The presence in Defendant's usage of Plaintiff's mark of any Chinese character translations cannot distinguish Defendant's adopted name(s) from the BIOPLUS Mark. *See In re Thomas*, 79 USPQ2d 1021 (TTAB 2006) (explaining the well-established doctrine of foreign equivalents).

Plaintiff does not need to "supplement its trademark," as asserted by Defendant, in order to bring the BIOPLUS Mark closer in proximity to Defendant's adopted trade names "Bio Plus Pharmacy," "Bio Plus Pharmacy, Inc.," and/or "Bio Plus Pharmacy, Inc. and Surgical Supplies." The marks are nearly identical, and in pertinent part ("bio plus"), completely identical.

B.      The Relative Services Are Extremely Close Or Identical

As to this element of the *Polaroid* test, Defendant's sole argument is that Defendant and BioPlus "are not competitors," in that they do not inventory the same type of prescription medications. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). As explained by the Second Circuit, this exact reasoning "represents a considerable misunderstanding of the *Polaroid* test." *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003). That Court stated: "The famous list of factors of likely pertinence in assessing likelihood of confusion in *Polaroid* was specially designed for a case like this one, in which the secondary user is not in

5

direct competition with the prior user, but is selling a somewhat different product or service. In *Polaroid*, the plaintiff sold optical and camera equipment, while the defendant sold electronic apparatus. The test the court discussed was expressly addressed to the problem 'how far a valid trademark shall be protected with respect to goods other than those to which its owner has applied it.'" *Id*.

In this case, Plaintiff's '227 Registration names services provided by both Plaintiff and by Defendant and thus clearly should be protected. Simply because BioPlus fills prescriptions for certain medications that Defendant does not keep in stock doesn't mean that Plaintiff and Defendant aren't providing highly similar, bordering on identical, *services*, both of which are covered by Plaintiff's '227 Registration.

The '227 Registration lists "[m]edical services, namely, chronic disease management consisting of therapy, medication and treatment." The normal operation of any retail pharmacy (such as that operated by Defendant) involves numerous services in the nature of "chronic disease management," in addition to the dispensing of prescription medications, which Plaintiff submits also falls under the definition of "chronic disease management," especially when the drugs being dispensed are for the medication and treatment of chronic diseases such as diabetes (Defendant specifically holds itself out as a provider of diabetes treatment and medication; *see* **Exhibit F**).

As further evidence that Defendant provides services that are specifically and directly covered by Plaintiff's registration for the BIOPLUS Mark, BioPlus submits **Exhibit G**, a screen shot from Defendant's website "Medication Therapy Management." Therein, Defendant explains its services of "Medication therapy management, known as MTM, … a term used for an approach to helping [the customer] manage your medications and health conditions." Defendant

6

also provides "Diabetes Support and Education," "Health Screenings," "Medication Synchronization," etc., all under the infringing Bio Plus trade name. *See* **Exhibits H-I**.

Further, Plaintiff submits as **Exhibits J-R** nine trademark registration records from the USPTO's Trademark Database, owned by nine separate entities, for services in both International Class 35 (for "medical services" and/or "disease management" services) *and* International Class 044 (for "retail pharmacy services"). Plaintiff submits that, at the very least, this evidence of multiple third parties using the same mark on both services of the type listed in the '227 Registration, and those services that Defendant admittedly offers, establishes that Defendant's services and the services in the '227 Registration are related.

    C.    <u>BioPlus Has Developed Strong Rights In The BIOPLUS Mark Over The Course of Two Decades</u>

Defendant's argument does not address the fact that Plaintiff has been using the BIOPLUS Mark in interstate commerce for more than twenty (20) years and has strategically invested substantially in advertising under this mark. *See* Montanez Supp. Dec. at ¶4. Even if this Court agrees with Defendant that the BIOPLUS Mark was weak at its inception (which Plaintiff does not concede), "a mark which is initially a weak one may, by reason of subsequent use and promotion, acquire such distinctiveness that it can function as a significant indication of a particular producer as source of the goods with which it is used." *Standard Intern. Corp. v. American Sponge & Chamois Co.*, 55 C.C.P.A. 1155, 394 F.2d 599, 600, 157 U.S.P.Q. 630 (1968).

And even if the Court were to agree with Defendant that the BIOPLUS Mark is weak *despite* Plaintiff's decades of continuous use of and advertising under the BIOPLUS Mark, even a weak mark can protect the senior user from infringement by a third party's use of a nearly *identical* name on overlapping and identical services. In the *Allstate* case, which Defendant cites, the trademark owner sold insurance, and the alleged infringer was an investment

7

corporation. *Allstate Ins. Co. v. Allstate Inv. Corp.*, 210 F. Supp. 25, 28 (W.D. La. 1962), aff'd, 328 F.2d 608 (5th Cir. 1964).   The Court pointed out that "[i]f Allstate Investment Corporation had itself engaged in the sale of insurance, there would be little difficulty in finding that the penumbral fringe cast by the word Allstate would cover the insurance field." *Id*.

Defendant also attempts to make the "crowded field" argument against Plaintiff's BIOPLUS Mark.  However, in order to succeed with this argument, the other "bioplus" marks that Defendant relies on must actually be in the same field.  2 McCarthy on Trademarks and Unfair Competition § 11:85 (5th ed.).  The success of this argument depends on a "crowd" of numerous third parties using a similar mark on similar goods or services. *Id*.

The nine active "bioplus" trademarks that Defendant's counsel has located are owned by a total of six separate entities, but none of the services used in connection with those marks even closely resembles the services offered by BioPlus.  They are: "air flow ventilating and filtration units"; "[c]arbon composite materials consisting of a fibrous reinforcing structure made of carbon fibers and densified by a carbon matrix, for use in manufacturing"; "[i]ndustrial hoses made of rubber…"; "microbial feed supplements for administration to beef cattle…"; "bacteria cultures and nutrients for wastewater and sludge treatment"; and "paperboard cartons."

Defendant next cites to: (1) an apparent common law mark owned by a chainsaw manufacturer (no evidence in the record as to which goods or services this mark is used for); (2) an inactive New York corporation; (3) a record for an apparently active Delaware corporation named "Bio Plus Fuel Station, LLC," again with no evidence of the goods or services on which this mark is used or whether this corporate name is actually used as a trademark or service mark at all; (4) an allegedly active (the web address that Defendant cites in its Opposition has no content) Georgia company that apparently produces bio fuel and animal feed pellets; (5) a company apparently located in Bangalore, India, wherein no evidence shows that such company

8

sells any products or services in the United States; (6) a company apparently located in Costa Rica, also without evidence that such company sells any products or services in the United States; (7) a company apparently located in Greece, also without evidence that such company sells any products or services in the United States; (8) a company apparently located in Malaysia, again without evidence that such company sells any products or services in the United States; and (9) various Amazon.com listings for dentures and dietary supplements.  Not *one* of Defendant's exhibits shows use of the term "bioplus" in the United States on goods or services that are even closely related to the services listed in the '227 Registration.

       D.       <u>Actual Confusion Is Abundant And Documented</u>

Next, Defendant argues that the evidence of actual confusion collected by BioPlus is *not* really evidence of actual confusion because "[u]nder any sensible definition, the customer of a pharmacy is the medical patient, not the doctor," and that those persons must be simply careless, not confused.  Yet elsewhere in the Opposition, Defendant concedes that "[t]he consumers here are doctors, as sophisticated a group as one could imagine."

Plaintiff notes that the relevant class of consumers here encompasses both pharmacy patients and their physician prescribers, who choose the pharmacy to which they send prescriptions.  Plaintiff agrees that doctors are sophisticated consumers who use care in assessing the pharmacy to be used in filling prescriptions for their patients.  Moreover, Defendant has provided absolutely no evidence that the now sixteen documented misdirected prescriptions are the result of carelessness and not actual confusion.

       E.       <u>Defendant's Bad Faith Is Exhibited By Its Continued Willful Infringement Of Plaintiff's Trademark Rights</u>

Whether or not Plaintiff actually operated a brick-and-mortar store in New York prior to 2004, when Defendant incorporated, is irrelevant.  Plaintiff's March 14, 2000 '227 Registration provides nationwide constructive ownership of Plaintiff's ownership of the BIOPLUS Mark.

9

Such constructive notice deprives subsequent users of the common law defense of "good faith" adoption without notice. *See Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir. 1959).

Most troublingly, on January 16, 2018, more than six years after Defendant had *actual* notice of Plaintiff's '227 Registration and concomitant national rights in the BIOPLUS Mark, Defendant registered the website www.biopluspharmacy.com on which Defendant advertises numerous services that overlap with Plaintiff's, and which fall squarely in the crosshairs of the services listed in the '227 Registration. *See* **Exhibit S**. Defendant's website is obviously accessible to consumers across the country, not just those in New York, which may be why mention of Defendant's Website is conspicuously absent from Defendant's Opposition.

## V. REGARDLESS OF THE STANDARD APPLIED BY THE COURT, PLAINTIFF EASILY MEETS IT

As discussed at length above, the facts show that Plaintiff has a clear likelihood of success on the merits of its claims, and that this Court should grant Plaintiff's Motion for Preliminary Injunction under either standard. However, the appropriate standard here is that for a prohibitive injunction. Plaintiff is not requesting that Defendant surrender phone numbers as in Defendant's cited case. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Plaintiff is attempting to halt Defendant's unlawful behavior and *stop* the flow of misdirected prescriptions that *both parties agree* is ongoing and dangerous. "[D]istrict courts considering Lanham Act false advertising claims regularly apply the 'prohibitory' standard" for preliminary injunctions and this Court should do the same here. *Gen. Mills, Inc. v. Chobani*, LLC, 158 F. Supp. 3d 106, 117–18 (N.D.N.Y. 2016).

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court grant its Motion for Preliminary Injunction, together with such further relief as the Court finds just and proper.

10

Dated: July 27, 2018            Respectfully submitted,

/s/ *Hal K. Litchford*
Hal K. Litchford, Esquire
Admitted *pro hac vice*
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
200 South Orange Avenue, Suite 2900
Orlando, FL  32801
Phone: 407-422-6600
Fax: 407-841-0325
Email:  hlitchford@bakerdonelson.com

/s/ Jura Zibas
Jura C. Zibas, Esquire
150 E. 42nd Street
New York, New York 10017
Telephone: (212) 490-3000
Facsimile:  (212) 490-3038
Email: Jura.Zibas@wilsonelser.com

*Attorneys for Plaintiff BioPlus Specialty Pharmacy Services, Inc.*